RECEIVED
IN LAKE CHARLES, LA

JUN - 5 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| IN RE: CAMERON PARISH RITA LITIGATION AGAINST STATE FARM | : | DOCKET NO. 2:07 MD 01 |
| | : | JUDGE MINALDI |
| | : | MAGISTRATE JUDGE WILSON |

THIS DOCUMENT RELATES TO:

| | | | |
|---|---|---|---|
| 2:06 CV 1614 | 2:06 CV 1646 | 2:06 CV 2022 | 2:06 CV 2047 |
| 2:06 CV 1615 | 2:06 CV 1728 | 2:06 CV 2034 | 2:06 CV 2100 |
| 2:06 CV 1628 | 2:06 CV 1918 | 2:06 CV 2035 | 2:06 CV 2113 |
| 2:06 CV 1629 | 2:06 CV 1942 | 2:06 CV 2037 | 2:06 CV 2131 |
| 2:06 CV 1644 | 2:06 CV 1964 | 2:06 CV 2045 | |
| 2:06 CV 1645 | 2:06 CV 1989 | | |

REPORT AND RECOMMENDATION

The court has sua sponte raised the issue of its subject matter jurisdiction in the consolidated cases where complete diversity is apparently lacking. See Doc. 1. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. This report and recommendation addresses those cases where complete diversity is apparently lacking because State Farm agents who are Louisiana citizens are included as defendants while one or more plaintiffs are also Louisiana citizens. State Farm contends that the citizenship of the Louisiana defendants should be disregarded in assessing the court's jurisdiction because these defendants have been fraudulently/improperly joined.

Fraudulent/Improper Joinder

Once a case has been removed, the burden lies with the removing party to prove that the

court has jurisdiction to decide the claim.  *Jernigan v. Ashland Oil Inc.*  989 F.2d 812, 815 (5th Cir. 1993)(citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)).  One prerequisite to removal is that this court must have original jurisdiction.  28 U.S.C. § 1441(a).  In some cases, including these, there is an additional requirement for removal--that "none of the parties in interest, properly joined and served as defendants" is a citizen of the forum state.  28 U.S.C. § 1441(b).  If removal is based on the claim that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*), *cert. denied by, Illinois Cent. R. Co. v. Smallwood*, ____ U.S. ____, 125 S.Ct. 1825 (4/18/2005)(citing, *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)).  There is no alleged fraud in these cases.  Accordingly, our focus is the second basis for improper joinder.  *See, Travis, supra*.

The focus of the court's inquiry is on the joinder of the forum state citizen, not on the merits of Plaintiff's case.  *Smallwood, supra* at 573.  In resolving this issue, we must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the in-state/non-diverse defendant; *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against the in-state/non-diverse defendant.  *Smallwood, supra*.

The court may resolve this issue in one of two ways:   1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the in-state/non-diverse defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the

2

few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood, supra.* Ordinarily, if Plaintiff survives the 12(b)(6) analysis there is no improper joinder. *Id.* The "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id* at 573-74.[1]  The motive or purpose for the joinder of the in-state defendant is irrelevant to this inquiry. *Id.* at 574. The court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis, supra.* Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete (and/or removal is improper), and remand is required. *Id.*

In general, State Farm alleges that there is no possibility of recovery against the agents in these cases because: (1) the agents owed no duty to plaintiffs that was causally related to their damages; and (2) any potential claims are barred by La.R.S. 9:5606.

Plaintiffs in 06 CV 2035, 06 CV 2131, 06 CV 2022, 06 CV2034, 06 CV 2100, 06 CV 2113, and 06 CV 2045 agree that there is no possibility of recovery against the non-diverse defendants in those cases.[2]  Accordingly, the claims against the non-diverse defendants should be dismissed, and these matters will not be remanded.

Defendants in 06 CV 2037, 06 CV 2047, 06 CV 1989, and 06 CV 1728 agree that there is a possibility of recovery against the non-diverse defendants in those cases so that remand is

---

[1] In other words, facts that can be easily disproved if not true. *Id.*

[2] See Joint Memorandum of Plaintiffs in Support of Remand @ n. 1.

3

appropriate.[3]

<u>Agent's Duties</u>

In general, the claims against the State Farm agents allege that the agents breached duties owed to Plaintiffs related to the adequacy and extent of coverage in effect at the time Hurricane Rita struck Cameron Parish.  State Farm argues that in assessing the possibility of recovery against its agents it is essential to make a distinction between an insurance agent and an insurance broker.  Because the State Farm agents are insurance agents State Farm contends that, as a matter of law, their duty to their clients, the plaintiffs, was limited to using reasonable diligence in attempting to place the insurance requested by the client.  A survey of Louisiana cases fails to support this argument.

*Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728 (La. 1973) was a suit by an insured against his insurance agent.  The insured had requested liability insurance with $100,000 limits but the agent, due to an error on his part, had only obtained $10,000 limits.  In finding for the insured the court stated:

> An insurance agent who undertakes to procure insurance for another owes an
> obligation to his client to use reasonable diligence in attempting to place the
> insurance requested and to notify the client promptly if he has failed to obtain the
> requested insurance.  The client may recover from the agent the loss he sustains as
> a result of the agent's failure to procure the desired coverage if the actions of the
> agent warranted an assumption by the client that he was properly insured in the
> amount of the desired coverage.
> 281 So.2d at 730-31.

In *Roger v. Dufrene*, 613 So.2d 947 (La. 1993) the insured sued it's State Farm agent

---

[3] *Id.*  This was verified during a telephone conference with counsel.  The docket number for Joseph C. Reina v. State Farm Fire and Casualty Co., et al was erroneously listed as 2:06 CV 2161.  The correct docket number is 2:06 CV 2037.

claiming that the agent was liable for failing to obtain an indorsement providing coverage while the insured's employees were driving their own vehicles. The court noted that the duty imposed on an insurance agent in an action by his client was one of "reasonable diligence a breach of which duty results in an action in negligence." *Id.* at 949 (internal quotes omitted). There was no suggestion that the insured might not be considered the "client" of the State Farm agent.

In *Durham v. McFarland, Gay and Clay, Inc.*, 527 So.2d 403 (La.App. 4 Cir. 1988) the insured sued his insurance agent/broker for failing to procure flood insurance coverage on the insured's residence. Defendant argued that *Karam* set out an exclusive list of the duties owed by an agent/broker to the insured. The court rejected this argument stating:

> Clay was acting as Durham's broker and thus is responsible for any fault or neglect while performing in that capacity. The jurisprudence has recognized that a broker's <u>fiduciary duty includes advising his client with regards to recommended coverage</u>, to investigate and ascertain the financial condition of prospective companies, and to notify the insured of cancellation or termination of coverage. We conclude that the *<u>Karam</u>* decision does not relegate the insurance broker to a mere "order taker". That case sets out the broker's duties when there is an admitted request for insurance, but <u>is not an exclusive recitation of a broker's duties to his client.</u>
> 527 So.2d at 405 (citations omitted, emphasis supplied).

The court went on to affirm the finding of fault on the part of the agent/broker. In doing so the court noted that the finding of fault was supported even absent a specific request by the insured for flood insurance. *Id.* at 407.

In *Crayton v. Sentry Insurance Co.*, 612 So.2d 767 (La.App. 1 Cir. 1992), *writ denied*, 614 So.2d 83-84 (La. 1993) the insured homeowners sued their insurance agent because their homeowners' policy was voided due to the increased risk created by the presence of paint supplies on the premises. The agent, an exclusive Sentry agent, had inspected the property and

5

failed to inform them that the presence of the paint supplies would threaten their coverage.  The

agent argued that since he was an agent and not a broker that he did not owe a duty to the

insureds to inform them that the presence of the paint supplies would void the policy.  The court

rejected this argument.  First, the court concluded that the distinction between an agent and a

broker was immaterial since both brokers and agents owe the same duty to a client for whom they

have agreed to procure insurance.  *Id.* at 771.  The court also held that this duty included the duty

to inform "the insured upon inspection of the premises of conditions which would constitute an

'increased hazard' which would thereby void the policy."  *Id.*

In *Zinsel v. J. Everett Eaves, Inc.*, 749 So.2d 798 (La.App. 5 Cir. 1999) the insured

sustained a $300,000 underinsured flood loss due to the fact that its coverage had not been

increased when Congress had increased the available limits of flood insurance.  The insured sued

its insurance agency claiming that the agency had breached the agency's duty to keep it informed

of changes in available flood insurance.  The court found that the agency owed a fiduciary duty to

the insured to keep its client abreast of pertinent changes in available flood insurance.  *Id.* at 800.

It affirmed the lower court's denial of liability based on evidence, including expert testimony,

that the agency's duty was satisfied by the fact that the insurer had mailed the insurer a letter

advising of the change in available flood insurance.

*Taylor v. Sider*, 765 So.2d 416 (La.App. 4 Cir. 2000), *writ denied*, 771 So.2d 86 (La.

2000) involved a suit by an insured against her State Farm agent.  The insured had been limited

to one $10,000 UM limit due to the anti-stacking provisions of Louisiana law.  She claimed that

the agent had breached the duty owed to her in that he had failed to explain the nature of the UM

anti-stacking provisions.  The court noted that both agents and brokers owe the same duty to a

6

client for whom they have agreed to procure insurance, and, that in some cases the agent owes a fiduciary duty to the insured. Based on this the court reversed a judgment granting an exception of no cause of action.

The Louisiana Supreme Court has rejected the position that the duty of an agent/broker depends on his status as either a broker or an agent. *Tiner v. Aetna Life Insurance Co.*, 291 So.2d 774 (La. 1974). In *Tiner* the broker was specifically found to be the mandatary of the insurer. *Tiner*, supra at 777. In so finding the court concluded that it was not the insurance agent's classification as a broker or agent that controlled; it was whether a principal-mandatary relationship existed with the insured that was determinative. "Statutes regulating licensing and defining agents, brokers, and solicitors are not intended to change or to exclude the general laws of agency. . . . " Id. La.C.C. art. 3000 specifically provides: "A person may be the mandatary of two or more parties, such as a buyer and a seller, for the purpose of transacting one or more affairs involving all of them. . . ." "The mandatary is bound to fulfill with prudence and diligence the mandate he has accepted. . . ." La.C.C. art. 3001. The mandatary must also discharge his obligations in good faith. La.C.C. art. 1759. "[W]hen the circumstances so require, the mandatary is bound to provide information. . . ." La.C.C. art. 3003. Under Louisiana law it is possible that State Farm agents were mandataries of both State Farm and Plaintiffs. *See also Breck Construction Co.,LLC v. Thomas, Farr & Reeves Agency, Inc.*, 852 So.2d 1151 (La.App. 2 Cir. 2003)[4]; *Smason v. Celtic Life Insurance Co.*, 615 So.2d 1079, 1087-

---

[4] While *Breck* concluded that a broker/agent had no duty to inform the insured that a builder's risk policy was lapsing under the circumstances presented it specifically stated: "This case is distinguishable from prior cases that found a breach of a duty by an agent to its client for failure to notify because in those cases there was no information conveyed to the client that it was not properly insured."

7

88 (La.App. 4 Cir. 1993), *writ denied*, 618 So.2d 416 (La. 1993)[5] (finding broker was not agent

of insurer under the circumstances, but acknowledging that either a broker or agent can be

mandatory of both parties); *Dauzat v. Gem Underwriters, Inc.*, 602 So.2d 196, 200 (La.App. 3

Cir. 1992), *writ denied*, 605 So.2d 1368 & 1370 (La. 1992) (". . . insurance broker, has a

fiduciary responsibility to the insured as well as to the insurer and is therefore responsible for its

fault or neglect); *Boyter v. Blazer Construction Co., Inc.*, 505 So.2d 854, 861 (La.App. 2 Cir.

1987)("In the absence of special circumstances, an insurance broker generally is considered to be

the agent of the insured in procuring a policy of insurance."); *Foster v. American Deposit

Insurance Co.*, 435 So.2d 571, 574 (La.App. 3 Cir. 1983) ( "Whether a broker in a particular

transaction acts as the agent of the insured or of the insurer, is a question of fact dependent on the

circumstances of the case.").

State Farm argues that it is well settled that a "mandatary who contracts in the name of

the principal within the limits of his authority does not bind himself personally for the

performance of the contract." La.C.C. art. 3016. While this position cannot be disputed it also

has no material bearing in these cases. This simply means that the agents are not personally

bound on the contract of insurance. It in no way undermines the duties owed by the mandatary to

its principal. La.C.C. arts. 3001 -3009.

Defendants cite *Graves v. State Farm Mutual Auto Insurance Co.*, 821 So.2d 769

(La.App. 3 Cir. 2002), *writ denied*, 829 So.2d 435 (La. 2002) in support of their claim that the

agents had no duty to advise Plaintiffs with regard to their coverage.  In *Graves* the insured sued

---

[5] Article 3016 of the Civil Code of 1870 formerly referred to a person who acts as a
mandatory to both parties to a matter as a broker. La.C.C. art. 3000 replaced the former article
3016, and no longer makes reference to a broker.

the insurance agent claiming that he was negligent for failing to advise the insured to carry higher automobile liability limits. The evidence before the court established that the insureds were long-time customers of the agent, that they had little contact with anyone within the agent's office, and that they never sought any insurance advice. The court relied on *Smith v. Millers Mutual Insurance Co.*, 419 So.2d 59 (La.App. 2 Cir. 1982), *writ denied*, 422 So.2d 155 (La. 1982) and found that there was no duty to advise the insured to purchase higher automobile liability limits.

In *Smith* the insured had an automobile liability policy with $100,000/300,000 limits and was found to be personally liable for damages exceeding his policy limits by over $100,000. He sued his agent claiming that the agent was negligent in failing to recommend higher liability limits. In rejecting this claim the court stated:

> The stated liability limits of an insurance policy is not a complex matter or provision. Although an insured should not be held to have read and understood the complex and often confusing intricate detailed provisions of an insurance policy, an insured should be held to have read and know the liability limits of his automobile insurance policy, plainly disclosed on the face of the policy, particularly where, as here, the insured is an educated, experienced businessman, signed an application showing the policy limits, and has received copies of his policy each year for several years with advice to review it. 419 So.2d at 65.

The court of appeal also specifically adopted the reasons for judgment by the trial court. These reasons for judgment made a clear distinction between liability limits and homeowner's limits stating: "No case has been cited that places a duty on an agent to advise what limits should be carried. Homeowners' limits and equipment coverage is different for what ought to be in place in those areas can be ascertained. This court cannot say what is a safe liability coverage." *Smith, supra* at 86.

9

It should be emphasized that in the context of a claim of fraudulent/improper joinder this court is not called upon to make an "Erie guess" with regard to Louisiana law on the issue of agent liability. The issue here is whether there is any possibility of recovery. Any ambiguities in state law must be resolved in favor of remand. *Smallwood, supra*. The cases discussed above convince this court that, for present purposes, there is a possibility that the State Farm agents breached a duty owed to their clients, the plaintiffs.

Are Claims Against the Agent Barred by La.R.S. 9:5606

Defendants also argue that there is no possibility of recovery against the State Farm agents because any such claims are barred by La.R.S. 9:5606. This statute provides, in pertinent part:

> A.  No action for damages against any insurance agent, broker, solicitor, or other similar licensee . . . shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
> . . . .
>
> D.  The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

Louisiana courts have consistently rejected the argument that mere policy renewals create a continuing tort or a separate tort in actions against insurance agents. For example, in *Biggers v. Allstate Ins. Co.*, 886 So.2d 1179 (La.App. 5 Cir. 2004) the plaintiffs purchased homeowners insurance in 1995. They asked for supplemental coverage for jewelry and silverware. In 2002 plaintiffs' home was burglarized and the jewelry and silverware were stolen.

Shortly thereafter plaintiffs discovered that their agent had not, as requested, obtained supplemental coverage for the jewelry and silverware. They sued their agent. When the agent raised R.S. 9:5606 as a defense plaintiffs argued that each time the policy was renewed there was either a continuing tort or a new tort. The court rejected plaintiffs' argument noting that after the issuance of the original policy, there was no occasion for the agent to misrepresent the coverage. Id. at 1183.

In *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d 377 (La.App.1 Cir. 2003), *writ denied*, 845 So.2d 1057 (2003), plaintiffs sued their agent claiming that he was negligent in advising them that they did not need UM coverage under a personal umbrella policy. Based on the agent's recommendation a rejection of UM coverage under the umbrella policy was last signed in 1994. Suit against the agent was filed in 1998. In an attempt to avoid the effects of R.S. 9:5606 plaintiffs argued that each time the policy was renewed there was either a new and distinct tort or a continuing tort. The court rejected plaintiffs arguments. It held that the continuing tort doctrine was a "suspensive principle" and as such did not prevent the running of the peremptive periods set out in R.S. 9:5606. The court also found that the mere renewal of the policy was simply a continuation of the effects of the original wrongful act and not a separate and distinct tort. The court specifically noted that the insured did not discuss her coverage with the agent subsequent to signing the UM rejection in 1994.

On the other hand where there is evidence of a breach of the agent's duty within the peremptive period R.S. 9:5606 will not preclude the possibility of recovery. In *Southern Athletic Club, LLC v. Hanover Insurance Company*, 2006 WL 2583406 (E.D.La.) the suit was filed more than three years after the original issuance of the policy. The dispute with the insurer centered on

whether the plaintiff's property was underinsured.  As here both the insurer and the non-diverse agent were made defendants.  The insurer removed the case to federal court taking the position that the agent had been fraudulently/improperly joined because any recovery against him was barred by the three year peremptive period established by La.R.S. 9:5606.  However each year, prior to renewal, the insured had discussed the increased value of the insured's property and the limits had been increased.  The court rejected the claim that the agent had been fraudulently/improperly joined concluding that there was still a reasonable possibility of recovery in that the renewals might constitute separate and independent acts of fault on the part of the agent.

The circumstances were similar in *Fidelity Homestead Association v. Hanover Insurance Company*, 2006 WL 2873562 (E.D.La.).  The insured met with the agent before each renewal in order to discuss whether any changes were needed in coverage.  The court rejected the argument that the claim against the agent was barred by peremption.  It concluded that there was a reasonable possibility that the meeting prior to the last renewal constituted a separate and independent act of fault.

With these legal principles in mind we turn the facts of the individual cases.

06 CV 1614 - D. Heath Quinn

Plaintiffs sued Enos Derbonne on August 16, 2006, alleging that he is liable to them because he failed to properly advise them of the need to have higher limits on their homeowner's policy.  This policy was originally sold to Plaintiffs in 1996.  De Ann Derbonne's affidavit indicates that the Plaintiffs did not contact the Derbonne agency after 1996 seeking advice as to the extent of their coverage.  Donna K. Quinn's affidavit states:

12

That plaintiff had numerous conversations with Derbonne's office, namely with Gayle and DeAnn Derbonne, regarding her homeowner's insurance, specifically, the addition of a new roof, the fire protection rating for the Creole District and the cost of her premium. Plaintiff believes that most of these conversations occurred within 2-3 years of Hurricane Rita. No one associated with Derbonne's office ever advised plaintiff that she needed higher policy limits.

First, the affidavit refers to conversations that, for the most part, occurred within 2-3 years of September 24, 2005. This means that some occurred beyond that time. Furthermore, this statement is consistent with the conversations occurring 3 to almost 4 years prior to suit being filed. Moreover, there is no indication that the Quinns sought advice as to the adequacy of their coverage during these conversations. Their claim against Derbonne is based on his alleged failure to properly advise Plaintiffs of their need for higher limits. There is no evidence that would support a conclusion that Derbonne committed a separate and independent breach of a duty in this regard within three years of suit being filed. Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiff's recovery against the agent.

06 CV 1615 - Patrick Bertrand

Enos Derbonne sold the Bertrands their policy in May, 2000. The limits were increased September 19, 2002, to comply with the requirements of their mortgage. De Ann Derbonne's affidavit denies that there was any further contact with the Bertrands prior to the suit being filed August 16, 2006. However, Telesha Bertrand's affidavit indicates that "within 2-3 years of Hurricane Rita" she had "numerous conversations with Derbonne's office regarding her homeowner's policy, specifically, the problems associated with the fire protection rating for the Creole Fire District, the costs associated with her premium, the payment of her premium from her escrow account, etc."

13

Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiff's recovery against the agent. Telesha Bertrand's affidavit does not establish a reasonable possibility that the claims against Derbonne are not perempted. First, the affidavit refers to conversations that, for the most part, occurred within 2-3 years of September 24, 2005. This means that some occurred beyond that time. Furthermore, this statement is consistent with the conversations occurring 3 to almost 4 years prior to suit being filed. Moreover, there is no indication that the Bertrands sought advice as to the adequacy of their coverage during these conversations. Their claim against Derbonne is based on his alleged failure to properly advise Plaintiffs of their need for higher limits. There is no evidence that would support a conclusion that Derbonne committed a separate and independent breach of a duty in this regard within three years of suit being filed.

<u>06 CV 1628 - B. Shane Jouett</u>

The Jouetts' suit was filed August 16, 2006. It included a claim against Enos Derbonne for failure to adequately advise them with regard to their limits of coverage. Defendants have filed two affidavits of De Ann Derbonne. These indicate that the Jouetts' policy was issued in 1988; their deductible was changed in 1995 and 1998; and there were two premium increases with the last being in 2002. According to Ms. Derbonne there was no contact with the agency regarding the extent of coverage after 1988. In response Mr. Jouett's affidavit indicates that he contacted the agency in August or September of 2005, regarding a claim. This was a claim relating to one of his cows being struck by a motorist. Ms. Derbonne's affidavit indicates that the extent of the Jouetts' coverage was not discussed during the conversations related to this claim. Additionally, Mr. Jouett makes vague, nonspecific references to a renewal letter

14

periodically sent to him by the agency. There is no evidence of an specific inquiries or advice given with regard to the extent of coverage under the Plaintiffs' policy within three years of suit being filed.

Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiffs' recovery against the agent. Plaintiffs' claim against Derbonne is based on his alleged failure to properly advise Plaintiffs of their need for higher limits. There is no evidence that would support a conclusion that Derbonne committed a separate and independent breach of a duty in this regard within three years of suit being filed.

06 CV 1629 - Thomas Rowland

The Rowlands filed suit against Enos Derbonne August 16, 2006, alleging that he is liable for failing to adequately advise them with regard to the need for higher limits. The affidavit of De Ann Derbonne indicates that the policy was sold in 1990. She contends that there was no contact with the agency after 2000. However, Thomas Rowland's affidavit indicates that he contacted the agency annually in connection with the renewal of his policy and that each time he made specific inquiries with regard to the limits on his policy.

Defendants have not satisfied their burden of establishing no possibility of recovery against Derbonne. They have not ruled out the reasonable possibility that Derbonne committed a separate and independent tort within the peremptive periods provided for by R.S. 9:5606.

06 CV 1644 - Joseph Wayne Sturlese

The Sturleses filed suit against Enos Derbonne on August 16, 2006, alleging that he was liable to them for failing to properly advise them of the need for higher limits on their homeowner's coverage. The policy was sold in 1981. In 1994, following discussions with the

15

agency, the coverage was decreased. Then in 2003 Plaintiffs requested an increase in their deductible in order to reduce their premiums. Suzanne Sturlese's affidavit indicates that Derbonne "would periodically review plaintiff's coverage and offer advise [sic] and suggest modifications to plaintiff regarding her insurance coverage." More specifically Mrs. Sturlese refers to a "Fire Policy Status" form dated October 6, 2004, that sets out the limits of coverage. Handwritten notes indicate that the increased by $9000 and the premium decreased by $1506. There is also a note signed by Mr. Derbonne with his phone number: "Thanks so much for your business. We appreciate you." There is no evidence that Plaintiffs, within the three years prior to suit, contacted Derbonne in order to seek his advice as to the adequacy of their limits. Merely, sending a policy status report with notations as to changes does not constitute the breach of any duty owed by Derbonne.

Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiffs' recovery against the agent. Plaintiffs' claim against Derbonne is based on his alleged failure to properly advise Plaintiffs of their need for higher limits. There is no evidence that would support a conclusion that Derbonne committed a separate and independent breach of a duty in this regard within three years of suit being filed.

06 CV 1645 - George C. Quinn, Jr.

The Quinns filed suit against Enos Derbonne on August 16, 2006, alleging that he is liable to them for failing to properly advise them with regard to proper limits on their homeowner's policy. De Ann Derbonne's affidavit indicates that the Quinns' originally purchased their homeowner's policy in 1994. She indicates that Plaintiffs did not contact the agency after that time to seek advice as to their coverage. George Quinn's affidavit indicates that

16

"Derbonne, would periodically review plaintiff's coverage and offer advice and suggest modification to plaintiff regarding his insurance coverage. There is no evidence that Plaintiffs, within the three years prior to suit, contacted Derbonne in order to seek his advice as to the adequacy of their limits. Merely, sending a policy status report with notations as to changes does not constitute the breach of any duty owed by Derbonne.

Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiffs' recovery against the agent. Plaintiffs' claim against Derbonne is based on his alleged failure to properly advise Plaintiffs of their need for higher limits. There is no evidence that would support a conclusion that Derbonne committed a separate and independent breach of a duty in this regard within three years of suit being filed.

06 CV 1646 - Ricky LeBoeuf

The LeBoeufs filed suit against Enos Derbonne on August 16, 2006, alleging that he is liable to them for failing to adequately advise them with regard to the policy limits on their homeowner's coverage. De Ann Derbonne's affidavit indicates that the policy at issue was sold to Plaintiffs in 1996. In 2004 Plaintiff asked to have their deductible increased in order to reduce their premium. Ms. Derbonne also indicates that at no time after 1996 did Plaintiffs ask Derbonne to evaluate their coverage. Ricky LeBoeuf's affidavit indicates that Derbonne would advise him as to the terms of his policy including limits. In 2004 the LeBoeufs met with Derbonne in his office to discuss the increased cost of their premium. Derbonne advised that them to increase their premium. However, the affidavit does not indicate that they sought any advice with regard to their limits of coverage. Mr. LeBoeuf also makes general allegations that he received policy status reports from Derbonne.

Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiffs' recovery against the agent.  Plaintiffs' claim against Derbonne is based on his alleged failure to properly advise Plaintiffs of their need for higher limits.  There is no evidence that would support a conclusion that Derbonne committed a separate and independent breach of a duty in this regard within three years of suit being filed.

06 CV 1918 - John Edward Portie

Plaintiffs sued Enos Derbonne on September 18, 2006, claiming that he is liable to them for failing to properly advise them with regard to their policy limits.  De Ann Derbonne's affidavit indicates that this policy was originally sold in 1986.  The limits were increased in 1995.  According to Ms. Derbonne's affidavit Plaintiffs did not contact the agency after 1995 in order to seek any advice as to their limits. Marion Glynn Portie's affidavit indicates that Derbonne send correspondence related to Plaintiffs' policy periodically.  This correspondence would often "contain defendant's handwritten notes referencing coverages, deductibles, etc." There is no evidence that Plaintiffs, within the three years prior to suit, contacted Derbonne in order to seek his advice as to the adequacy of their limits.  Merely, sending a policy status report with notations as to changes does not constitute the breach of any duty owed by Derbonne.

Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiffs' recovery against the agent.  Plaintiffs' claim against Derbonne is based on his alleged failure to properly advise Plaintiffs of their need for higher limits.  There is no evidence that would support a conclusion that Derbonne committed a separate and independent breach of a duty in this regard within three years of suit being filed.

06 CV 1942 - Richard C. Wicke

18

Plaintiffs filed suit against Enos Derbonne claiming that he is liable to them for failing to adequately advise Plaintiffs as to the coverages that they needed.  The affidavit of De Ann Derbonne indicates that the homeowner's policy was purchased in 1988 and that flood insurance was purchased in 1992.  She alleges that Plaintiffs did not seek any advice with regard to either homeowner's coverage or flood insurance after 1992.  However, the affidavit of Richard G. Wicke alleges: "In March 2005, Affiant spoke to Enos Derbonne, an agent for State Farm, to inquire about the 'hurricane deductible' language.  Affiant inquired as to whether there was adequate protection for his property in the event a hurricane destroyed his property." This is more than "passive reliance" on the agent.

Defendants have not satisfied their burden of establishing no possibility of recovery against Derbonne.  They have not ruled out the reasonable possibility that Derbonne committed a separate and independent tort within the peremptive periods provided for by R.S. 9:5606.

06 CV 1964 - Michael Bercier

Plaintiff sued Dale Barton Bernard and the Bernard Insurance Agency, Inc. on September 25, 2006, claiming that these defendants were liable to him for any damages sustained as a result of not having adequate insurance coverage.  More specifically Plaintiff complains that these defendants failed to advise Plaintiff that excess flood insurance was available.  Plaintiff's flood insurance was initially acquired in 1987.  In 1993 Plaintiff requested increased coverage, and the agent advised that Plaintiff already had the maximum available under the NFIP.  In 1995, the agent notified Plaintiff of an increase in available flood coverage under the NFIP.  Plaintiff obtained the maximum coverage.  In 1999 Plaintiff asked the agent for an increase in homeowner's coverage for a dwelling extension but did not ask for flood coverage for the

19

extension. At the time of Hurricane Rita Plaintiff had the maximum coverage available under the NFIP. According to Mr. Bernard's affidavit Plaintiff did not discuss flood insurance limits with him after 1995. Plaintiff does not contest these facts.

Defendants have satisfied their burden of establishing that R.S. 9:5606 bars Plaintiffs' recovery against the agent. Plaintiffs' claim against Bernard is based on his alleged failure to properly advise Plaintiffs of availability of excess flood insurance. There is no evidence that would support a conclusion that Bernard committed a separate and independent breach of a duty in this regard within three years of suit being filed.

Accordingly, it is recommended:

(A) that the following cases be remanded:

1.    06 CV 1629
2.    06 CV 1728
3.    06 CV 1942
4.    06 CV 1989
5.    06 CV 2037
6.    06 CV 2047

(B) that sua sponte summary judgment be granted dismissing the claims against the non-diverse State Farm agents in the following cases[6], and that remand be denied:

1.    06 CV 1614
2.    06 CV 1615
3.    06 CV 1628
4.    06 CV 1644
5.    06 CV 1645
6.    06 CV 1646
7.    06 CV 1918
8.    06 CV 1964
9.    06 CV 2022

---

[6] "Summary judgment will always be appropriate in favor of a defendant against whome there is no possibility of recovery." *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 102 (%th Cir. 1990). See 5/25/07 minute entry.

20

10.    06 CV 2034
11.    06 CV 2035
12.    06 CV 2045
13.    06 CV 2100
14.    06 CV 2113
15.    06 CV 2131

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 5th day of June, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

21